**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: | ) |
| | )  MDL No. _____ |
| CenturyLink Residential Customer Billing | ) |
| Disputes Litigation | ) |

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CENTURYLINK, INC. AND ITS SUBSIDIARIES FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**

---

DOUGLAS P. LOBEL
DAVID A. VOGEL
Cooley LLP
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone:  (703) 456-8000
Facsimile:  (703) 456-8100
Email: dlobel@cooley.com
        dvogel@cooley.com

*Attorneys for CenturyLink, Inc. and Its*
*Subsidiaries (collectively "CenturyLink")*

## <u>TABLE OF CONTENTS</u>

**Page**

BACKGROUND ............................................................................................................ 4

I.     CENTURYLINK PROVIDES RETAIL PHONE, INTERNET, AND
VIDEO SERVICES ................................................................................... 4

II.    THESE IDENTICAL ACTIONS RAISE COMMON FACTUAL
DISPUTES AND DEFENSES ................................................................... 4

    A.    The Identical Actions Raise the Same Factual Issues for All
Defendants ................................................................................... 5

    B.    Courts Will Need to Resolve the Same Motions Based on the Same
or Very Similar Underlying Facts in These Actions................................. 8

    C.    Plaintiffs Undoubtedly Will Seek Discovery on the Same
Witnesses and Documents ...................................................... 13

ARGUMENTS............................................................................................................ 14

I.     THE ACTIONS "INVOLVE ONE OR MORE COMMON QUESTIONS
OF FACT" ............................................................................................... 14

II.    TRANSFER WOULD BE CONVENIENT TO THE PARTIES AND
WITNESSES............................................................................................. 16

III.   TRANSFER WILL PROMOTE THE JUST AND EFFICIENT
CONDUCT OF THESE ACTIONS ...................................................... 17

IV.   THE PANEL SHOULD CONSOLIDATE THE ACTIONS WITH THE
HON. MICHAEL J. DAVIS OF THE DISTRICT OF MINNESOTA .............. 18

CONCLUSION............................................................................................................ 20

The Judicial Panel on Multidistrict Litigation (the "Panel") should transfer nine virtually-identical and potentially overlapping class actions, filed in nine different federal courts, to the Hon. Michael J. Davis of the U.S. District Court for the District of Minnesota.  The actions all involve a concerted, nationwide attack on communications carrier CenturyLink and its subsidiaries, filed by a single law firm, using a template Complaint.  Without consolidation in one transferee court, there exists a significant threat of overlapping classes, inconsistent results, gross inefficiency among many federal courts, and prejudice to CenturyLink caused by duplicative motions practice and discovery.

Fourteen plaintiffs, all alleging to be phone and Internet customers of CenturyLink, Inc. and its wholly-owned subsidiaries (collectively "CenturyLink"), have filed overlapping class actions alleging a company-wide scheme to generate revenue by misrepresenting charges and services, and by improperly billing customers, among other things.  CenturyLink, Inc., the publicly-traded parent company of the family of subsidiaries, is a defendant in each action; all of the other defendants are wholly-owned subsidiaries of CenturyLink, Inc.  The actions broadly allege the same core facts:  that CenturyLink had a uniform policy or practice to increase customer bills and generate revenue by charging for services customers did not order.

These actions present the quintessential case for consolidation under 28 U.S.C. § 1407(a).  Consolidation will (1) avoid encumbering multiple federal courts with duplicative work, including addressing the same affirmative defenses, discovery efforts, and class-action issues, and will (2) eliminate the risk of inconsistent results.

*First*, the multiple actions present numerous, common factual issues.  Each action has been filed by one or more CenturyLink customers, alleging that he or she was charged for services or fees that were not disclosed, were not ordered, or were not delivered as promised.

Each action contends that CenturyLink had a uniform, nationwide sales practice that allegedly encouraged its sales agents to make misrepresentations about the prices and/or quality of services, and to charge for services that customers allegedly did not order.  Demonstrating the overlapping factual issues of these actions, the Complaints in many of the actions:

- refer to the same employment lawsuit recently filed in Arizona state court, in which a disgruntled former employee alleges she became aware of this alleged nationwide sales policy;

- reference the same consumer postings on social media, describing CenturyLink's alleged improper sales practices; and

- are virtual copies of each other, differing only in describing the individual named plaintiffs and the individual causes of action.

The actions will share many of the same factual inquiries, and will require the courts to resolve many of the same motions based on these facts, including:

- motions to compel arbitration, based on similar language in all of the plaintiffs' contracts;

- motions to enforce class-action waivers, based on similar language in all of the plaintiffs' contracts;

- motions based on the same fraud and quasi-contract claims, or to apply federal regulations of the Federal Communications Commission ("FCC") regarding alleged "cramming" practices by carriers like CenturyLink;

- motions to dismiss or for early summary judgment regarding various CenturyLink entities that have been inappropriately named as defendants when, in fact, they do not provide the services that are identified in the Complaints;

- motions to certify classes under Fed. R. Civ. P. 23 ("Rule 23"), where each action proffers the same or very similar class and alleges the same uniform conduct by CenturyLink; and

- discovery on CenturyLink's nationwide sales and billing practices, where plaintiffs in every action allege a company-wide, uniform policy to mischarge or overbill customers.

The most common overlap of these cases is that each court will grapple with the same factual issues on Rule 23 class certification:  whether plaintiffs have actually identified a nationwide "practice" that is susceptible to class-wide resolution, or have instead merely amalgamated garden-variety consumer disputes under the general banner that a small percentage of CenturyLink consumers sometimes express complaints and frustration with their service providers for any large number of reasons.  This analysis will benefit from consolidation, because the same type of analysis will be applied to plaintiffs' various disputes and the underlying facts about CenturyLink's billing practices and procedures.

*Second*, the parties and witnesses will greatly benefit from consolidation.  Without transfer, the parties will have to litigate the same issues—dispositive motions, discovery disputes, motions to compel and class-certification motions—in multiple federal courts, implicating both consistency and efficiency concerns.  Consolidation is also consistent with CenturyLink's centralized, nationwide management of its sales and billing practices.  In addition, multiple witnesses will avoid being subjected to duplicative discovery in each of these actions.

*Third*, consolidation will promote the "just and efficient" conduct of the courts.  No reason exists for multiple federal judges to address the same disputes about the same alleged nationwide billing practices of a single family of related companies.  Furthermore, without transfer, a significant risk exists of inconsistent rulings, including rulings on Rule 23 motions, Rule 12 and/or Rule 56 judgments and motions to compel.  Indeed, CenturyLink's operating companies could face inconsistent rules going forward if different courts enter separate judgments on class actions that overlap with the same customers.

As discussed below, the Hon. Michael J. Davis, of the U.S. District Court for the District of Minnesota is the most appropriate judge and transferee forum.  Judge Davis presides over the

*Romero* action, one of the nine actions at issue here.  He is a highly respected jurist who is very experienced in presiding over multidistrict proceedings, including those, like here, in which coordination with related state court cases will be necessary.

## BACKGROUND

### I.  CENTURYLINK PROVIDES RETAIL PHONE, INTERNET, AND VIDEO SERVICES

CenturyLink is a Monroe, LA-based family of commonly-owned companies providing local and long-distance phone service, Internet services, and video services to residential consumers, among others.  CenturyLink is the nation's third largest provider of local phone services, offering services in 33 states to about 11 million customers.  CenturyLink provides Internet services in 33 states to over 5 million subscribers, and video services in twelve states to over 300,000 customers.  CenturyLink also provides a wide variety of business services not implicated by the actions.  *See* Declaration of Guy E. Miller III ("Miller Decl."), ¶¶ 3-6 (attached as Exhibit 1).

Over the years, CenturyLink grew through combinations with a number of companies. At all times relevant to these lawsuits, the consumer sales and billing channels at CenturyLink have all reported to common management, and have all been subject to common sales and billing policies and practices that apply across all consumer channels.  Miller Decl. ¶ 7.

### II.  THESE IDENTICAL ACTIONS RAISE COMMON FACTUAL DISPUTES AND DEFENSES

These nine virtually-identical lawsuits all concern the same claims—that CenturyLink allegedly employed uniform, nationwide sales practices or policies to misrepresent its services and to charge undisclosed or higher prices on consumers' bills in order to meet sales goals and increase revenue.  Thus, the same factual issues will arise in each of the actions.  Many of the same affirmative defenses and class-action issues exist across all of the actions as well.

A.    <u>**The Identical Actions Raise the Same Factual Issues for All Defendants**</u>

To date, there are nine lawsuits with fourteen individually named plaintiffs.  The same law firm is lead or co-counsel in each lawsuit (Geragos & Geragos of Los Angeles, CA).  The lawsuits are brought by phone, video, and/or Internet customers of CenturyLink.

These identical lawsuits raise the same core factual disputes.  Many of the Complaints are virtually identical, with the exception of plaintiff-specific paragraphs.  For instance, the *Garten* Complaint in Nevada is so clearly block copied from the earlier-filed *McLeod* Complaint in California that the *Garten* Complaint mistakenly sets forth the California jurisdictional allegations of the *McLeod* suit, namely, that the four CenturyLink defendants were registered to do business in **California**.  *Compare Garten* Compl. (NV) ¶ 22 *with McLeod* Compl. (CA) ¶ 41. In addition, one plaintiff recently filed a "Notice of Pendency of Other Actions in Another Jurisdiction or Forum" in the Washington action (attached as Exhibit 2), which lists the then-pending other actions as related to each other.  That Notice stated that transfer under Sections 1404 or 1407 "may be appropriate to avoid conflicts, conserve resources and promote judicial efficiency."  Exhibit 2 at 2.

The named plaintiffs all allege that CenturyLink had nationwide, uniform practices and policies to misrepresent its services and to include undisclosed or higher prices on consumers' bills, in order to meet sales goals and generate revenue.  *E.g.*, *McLeod* Compl. ¶ 1 ("unlawful billing practices") & ¶ 11 ("offending and unlawful conduct by CenturyLink, throughout the United States").[1]

---

[1]     *Accord Garten* Compl. (NV) ¶¶ 2, 13; *Lawhead* Compl. (WA) ¶¶ 6, 15; *Hanifen* Compl. (ID) ¶¶ 1, 11; *Allison* Compl. (AZ) ¶¶ 13, 27; *Romero* Compl. (MN) ¶¶ 14, 32; *see also Gonsior* Compl. (OR) ¶ 1 ("billing pattern and practice" that "systematically and intentionally overcharged" consumers) & ¶ 4 ("systematically engaged in unlawful billing tactics"); *Chavez* Compl. (CO) ¶ 2 ("widespread and contentious practice" of incorrectly billing customers) & ¶ 17 ("massive scheme of billing fraud" and "practice of adding false, fraudulent charges").

Claiming that they were each affected by these allegedly uniform, company-wide policies, plaintiffs raise varying, garden-variety consumer disputes and service issues—for allegedly charging the wrong prices, or including hidden fees or incorrect billing dates—related to their purchases of CenturyLink's phone, Internet, and video services.  Some of the cases allege:

- ***Poor Quality:***  A plaintiff in the California action, Craig McLeod (an Alabama resident), alleges that his Internet connection was slower than a CenturyLink sales representative had promised, despite CenturyLink technicians being unable to diagnose the problem (*McLeod* Compl. (CA) ¶¶ 15-21).

- ***Wrong Price:***  The other plaintiff in the California action, Steven McCauley (a Kansas resident), alleges that a CenturyLink sales agent quoted one price for Internet service, but he ended up paying a higher price (*Id.* ¶¶ 26-32).

- ***Hidden Fees:***  The Oregon plaintiff, Heather Gonsior, alleges that a door-to-door sales agent for CenturyLink's fiber-optic services failed to disclose hidden prices for the service (*Gonsior* Compl. (OR) ¶¶ 5-9).

- ***Wrong Billing Date:***  The Nevada plaintiff, David Garten, does not allege the specific service he received, only that he switched from Cox to CenturyLink based on an oral promise from a CenturyLink sales representative that his account would be auto-debited near the end of the month, but in fact CenturyLink auto-debited his account mid-month (*Garten* Compl. (NV) ¶¶ 15-20).

- ***Unordered Phone Service Charges:***  The Colorado plaintiff, Anthony Chavez, alleges that he signed up for CenturyLink's Internet and video services, but CenturyLink "added telephone service to [his] account and charged him an additional amount for that service," which he claims are "bogus charges . . . for phone service" (*Chavez* Compl. (CO) ¶ 8).

The Complaints allege that the putative class members have a similarly disparate and unrelated list of every imaginable type of typical consumer complaint.  For example, several plaintiffs allege that the class should consist of consumers subject to the following alleged conduct:

- "Billing consumers for phone lines or service items never requested by consumers";

- "Billing consumers higher rates than the rates quoted during sales calls";

- "Billing consumers early termination fees when they cancelled the services due to higher rates";

- "Billing consumers when they cancelled their service upon learning the quality was not how CenturyLink had represented it";

- "Billing consumers for periods of service before the service was connected, products never received, and consumers received no credit for these charges";

- "Billing consumers for services and products that the consumer never requested without giving the consumer a credit for these charges";

- "Failing to process consumers' service cancellation requests in a timely manner and billing them for the period of the time the service remained connected following the request for cancellation, without providing a credit for this time period"; and

- "Charging consumers full price for leased modems that consumers returned to CenturyLink within the required timeframe, and then referring the consumers account to collections when the consumer refused to pay for the returned modem."

*McLeod* Compl. (CA) ¶ 11; *accord Garten* Compl. (NV) ¶ 13; *Lawhead* Compl. (WA) ¶ 15; *Hanifen* Compl. (ID) ¶ 11; *Allison* Compl. (AZ) ¶ 27; *Romero* Compl. (MN) ¶ 32; *Carrillo* Compl. (FL) ¶ 33.

Each of the Complaints also lists the same source for some of the allegations:  a purported employee whistleblower lawsuit recently filed against CenturyLink in Arizona state court.  In that action, a disgruntled former employee, Heidi Heiser, alleges that she complained about the Company's nationwide "practices" or "culture" to overbill customers.  Each of the putative class actions, filed shortly after the whistleblower case was filed in Arizona:

- uses the allegations in Heiser's Complaint as the basis for believing that the plaintiff was affected by those alleged company-wide practices;[2] and

- attempts to buttress plaintiff's factual allegations by claiming that other consumers have posted gripes about CenturyLink's services on social media— often, the Complaints cite (and even quote, depict pictures of, or attach) the *same* anonymous materials cut and pasted from the Internet.[3]

**B.    Courts Will Need to Resolve the Same Motions Based on
the Same or Very Similar Underlying Facts in These Actions**

These actions give rise to a long list of virtually-identical motions that courts will need to address in each action.

*1.    Class Certification Issues Under Rule 23(b)(3).*   Potentially the most significant motion in each action will be plaintiffs' motion to certify a class under Rule 23(b)(3).  These motions will present basically the same legal and factual issues in each action.

Each court will have to resolve a Rule 23 motion in which plaintiff(s) asks for a class consisting of CenturyLink retail customers who allegedly were deceived by CenturyLink's sales representatives and/or paid inappropriate charges on their bills.  The Complaints that do provide class definitions all use the same or similar definitions:

- "All persons . . . who contracted with [CenturyLink] for telephone, television and/or internet service during the relevant Class Period" (*Allison* Compl. (AZ) ¶ 44; *Romero* Compl. (MN) ¶ 44; *Carrillo* Compl. (FL) ¶ 45).

- Consumers "who made a payment to CenturyLink . . . where charges were assessed that were not owed" (*Lawhead* Compl. (WA) ¶ 25; *Hanifen* Compl. (ID) ¶ 33).

- Consumers "who were charged for services they did not request" (*Chavez* Compl. (CO) ¶ 11).

---

[2]     *McLeod* Compl. (CA) ¶¶ 1-2; *Gonsior* Compl. (OR) ¶¶ 15-16; *Garten* Compl. (NV) ¶¶ 2-3; *Lawhead* Compl. (WA) ¶¶ 6-7; *Hanifen* Compl. (ID) ¶¶ 1-2; *Chavez* Compl. (CO) ¶ 2; *Allison* Compl. (AZ) ¶¶ 13-14; *Romero* Compl. (MN) ¶¶ 14-15.

[3]     *McLeod* Compl. (CA) ¶¶ 3-11; *Garten* Compl. (NV) ¶¶ 3-9; *Lawhead* Compl. (WA) ¶¶ 8-13; *Hanifen* Compl. (ID) ¶¶ 3-4, 6-9; *Chavez* Compl. (CO) ¶¶ 20-21; *Allison* Compl. (AZ) ¶¶ 18-24; *Romero* Compl. (MN) ¶¶ 19-28; *Carrillo* Compl. (FL) ¶¶ 23-29.

- Consumers who "bought and paid for CenturyLink, Inc.'s communication services," and "discovered" that CenturyLink "overbilled or charged a hidden fee" that CenturyLink "failed to disclose, as part of one of the unlawful billing tactics" (*Gonsior* Compl. (OR) ¶ 18).

Some of the cases expressly limit their classes to consumers in one state:  *Gonsior* (OR); *Garten* (NV); *Allison* (AZ); *Hanifen* (ID); *Romero* (MN); and *Carrillo* in Florida.  The other Complaints do not specifically state whether they contemplate state-only or nationwide classes.  However, these Complaints state that CenturyLink's practices were conducted "throughout the United States," and they quantify the number of allegedly affected consumers and amount of damages using enormous figures ("$12 billion") that, questions of their validity aside, could only be nationwide.  *McLeod* Compl. (CA) ¶¶ 2, 11; *Lawhead* Compl. (WA) ¶¶ 7, 15; *Chavez* Compl. (CO) ¶¶ 9, 12 (estimates potentially hundreds of thousands or millions of class members since CenturyLink has over five million subscribers).

Thus, the class certification motions in these actions will present the same issue:  whether the alleged conduct, which plaintiffs contend is the result of a company-wide practices or policies, is susceptible to class-wide resolution.  Demonstrating that the class-action issues will be the same in each action, most of the Complaints describe the same "common" factual issues:

> (i)  Whether Defendants made false representations about their telecommunications services;
> (ii)  If so, whether Defendants knew they were false or were reckless as to their veracity at the time they were made;
> (iii)  Whether Defendants negligently misrepresented various facts regarding its billing services; and
> (iv)  Whether Defendants breached any implied or explicit contractual obligations to subscribers or fraudulently engaged services and/or billed services not being offered, not contemplated, or not agreed upon.

*McLeod* Compl. (CA) ¶ 42(b); *accord Garten* Compl. (NV) ¶ 33.b; *Hanifen* Compl. (ID) ¶ 37(b); *Allison* Compl. (AZ) ¶ 45(b); *Romero* Compl. (MN) ¶ 47(b); *see also Lawhead* Compl. (WA) ¶ 28 (list of allegedly common fact issues includes billing of services not offered); *Gonsior*

Compl. (OR) ¶ 24 (common fact question is "whether CenturyLink, Inc. acted willfully, recklessly, knowingly, and or intentionally"); *Chavez* Compl. (CO) ¶ 13 (common fact questions include whether CenturyLink acted deceptively or unconscionably); *Carrillo* Compl. (FL) ¶ 46(b) (list of allegedly "common questions of law and fact" similar to those in other actions). While there are common questions of fact and law justifying consolidation, CenturyLink strongly disagrees that these "facts" exist, or are common, or can be resolved systematically on a class-wide basis for all class members—because CenturyLink's representations, knowledge and conduct would be unique and specific to each individual sales representative and each consumer for every transaction separately. Each court will need to address whether plaintiffs' arguments about these "common" facts justify certification of a class.[4]

Each court will also have to resolve these *same* questions as to whether these identically- or similarly-defined classes are appropriate under Rule 23(b)(3), based on the same allegations of CenturyLink's purportedly underlying, uniform conduct. Furthermore, to the extent that any of these actions contemplate nationwide classes, the class definitions overlap and the same consumers would be members of classes in multiple actions.

---

[4]     While many common issues exist justifying consolidation, that does not mean that common issues support certification under Rule 23. The existence of common factual or legal issues (supporting consolidation under Section 1407) presents different questions and analysis, such as whether each class member's claims present common issues that predominate over individual issues (supporting certification under Rule 23(b)(3)). *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, No. MDL 09-2074, 2014 WL 12588474, at *3 (C.D. Cal. Dec. 4, 2014) (explaining how "standard for consolidation and the standard for class certification are distinct and are motivated by different considerations"). Transferee courts in multidistrict litigation proceedings regularly deny motions for class certification, which proves that cases can be consolidated to save judicial resources—but that does not say anything about whether class members' claims are best adjudicated on a class-wide basis. *E.g.*, *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, No. 09-md-2059, 2010 WL 3893807, at *3 (D. Minn. Sept. 29, 2010) (denying class certification in consolidated, multidistrict litigation); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, No. MDL 071873, 2008 WL 5423488, at *1 (E.D. La. Dec. 29, 2008) (same); *In re Air Crash at Sioux City, Iowa on July 19, 1989*, No. MDL-817, 1990 WL 6891, at *2-3 (N.D. Ill. Jan. 9, 1990) (same).

2.      ***Plaintiffs' Agreement to Arbitrate Their Claims.***  Plaintiffs' contracts with CenturyLink include a conspicuous capitalized arbitration clause, in which plaintiffs agreed to forego any court actions and instead resolve all disputes with CenturyLink in binding arbitration. Miller Decl. ¶ 10.  It is now well-settled law that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, mandates that federal courts enforce these clauses strictly.  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) ("Courts must 'rigorously enforce' arbitration agreements according to their terms . . . .") (citation omitted); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("[P]reeminent concern of Congress . . . was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation . . . .").  Therefore, in every action, CenturyLink intends to file a motion to compel arbitration.[5]

3.      ***Plaintiffs' Agreement to Class-Action Waiver Clauses.***  Similarly, plaintiffs' contracts with CenturyLink include a conspicuous "class action waiver" clause, in which plaintiffs agreed not to join or pursue any claims with other CenturyLink customers on a class-wide basis.  Miller Decl. ¶ 11.  Federal courts uniformly enforce these clauses.  *Am. Express*, 133 S. Ct. at 2311; *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 471 (2015); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 357 (2011).  Thus, CenturyLink intends to file motions to dismiss all class-wide claims in each action, on the basis of the named plaintiff's (or plaintiffs') contractual agreement.  This issue, like arbitration, will arise in every action.

---

[5]      By filing this motion under Section 1407, CenturyLink is not waiving its right to compel arbitration of these plaintiffs' disputes.  *Cf.*, *Currency Conversion Fee Antitrust Litig.*, 176 F. Supp. 2d 1379, 1380 & n.3 (J.P.M.L. 2001) (defendants requested transfer under Section 1407, but were "not waiving their right to request or compel" arbitration).

**4.     *Plaintiffs' Causes of Action for Fraud and Unjust Enrichment.*** In many of the lawsuits, plaintiffs raise the same causes of action for fraud and unjust enrichment.[6] These causes of action raise the same issues in the actions, such as:  whether any of the Complaints fail to plead fraud with particularity, as required by Rule 9(b); whether the alleged nationwide conduct constitutes "fraud"; and whether a consumers' agreement to standard CenturyLink contracts negates any elements of these claims for fraud or quasi-contract.

**5.     *Application of "Anti-Cramming" Laws.*** Many of the asserted claims allege conduct known as "cramming"—the practice of inserting on a consumer's phone bill charges or services that the customer did not order.  The FCC maintains nationwide rules against cramming practices.  *See* 47 C.F.R. § 64.2400 *et seq.* (2016).  Many states do to as well.  *E.g.*, Nev. Rev. Stat. § 598.969 (2014); Idaho Code 62-616A; Colo. Rev. Stat. § 40-15-113 (2014).  Resolving plaintiffs' and/or putative class members' claims may fall under federal or state anti-cramming laws—and, depending on the particular nature of the charge at issue, might not even be properly raised in a lawsuit.  *E.g.*, *Frels v. Qwest Corp.*, Civ. No. 10-2520, 2010 WL 8901569, at *3 (D. Minn. Oct. 20, 2010) (Minn. state statute on cramming did not provide private right of action against local phone company).  Each court thus will need to apply anti-cramming regulations to the claims in each action.

---

[6]     *See McLeod* Compl. (CA) ¶¶ 44-53 (Count I: Fraud), ¶¶ 66-67 (Count III: Unjust Enrichment); *Garten* Compl. (NV) ¶¶ 35-44 (Count I: Fraud), ¶¶ 57-58 (Count III: Unjust Enrichment); *Lawhead* Compl. (WA) ¶¶ 38-46 (Count I: Fraud), ¶¶ 53-54 (Count III: Unjust Enrichment); *Hanifen* Compl. (ID) ¶¶ 39-48 (Count I: Fraud), ¶¶ 59-60 (Count III: Unjust Enrichment); *Chavez* Compl. (CO) ¶¶ 23-24 (Count I: Consumer Fraud and/or Unconscionable or Unfair Practices, ¶¶ 34-35 (Count IV: Unjust Enrichment); *Allison* Compl. (AZ) ¶¶ 47-58 (Count I: Arizona Consumer Fraud Act), ¶¶ 82-83 (Count IV: Unjust Enrichment); *Romero Complaint* (MN) ¶¶ 49-58 (Count I: Minnesota Consumer Fraud Act), ¶¶ 103-04 (Count VII: Unjust Enrichment); *Carrillo* Compl. (FL) ¶¶ 84-86 (Count V: Unjust Enrichment).

**6.**     ***Application of the "Filed Tariff Doctrine."***  To the extent that any plaintiffs or putative class members have claims about the terms or prices of local phone service, their claims may not be subject to contracts, but to the requirements of CenturyLink's filed tariffs.  Miller Decl. ¶ 12.  A tariff is not a contract, but is a statement of terms and charges that CenturyLink files at the FCC or at the state public utility commissions; the tariff is binding on both CenturyLink and the customer without exception.  *See, e.g.*, *AT&T Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 221-22 (1998); *see also S. New Eng. Tel. Co. v. Global NAPS Inc.*, 624 F.3d 123, 129 (2d Cir. 2010) ("*SNET*") (tariff has force and effect of law).

Any claim by a plaintiff or putative class member that would require CenturyLink to charge a different price for a tariffed service—or would give the customer a preference, benefit or service not given uniformly to all other customers—is barred by the "filed tariff doctrine." *Cent. Office*, 524 U.S. at 222-23; *SNET*, 624 F.3d at 129.  Application of the filed tariff doctrine will arise in each action involving tariffed phone services.  Based on some of the information in the Complaints, it appears that tariffed phone services are among the disputes raised in the actions in several of the states.

### C.     Plaintiffs Undoubtedly Will Seek Discovery on the Same Witnesses and Documents

CenturyLink expects to use the same witnesses to defend each of the actions.  Plaintiffs undoubtedly will want to depose CenturyLink's managers who oversee the Company's sales and billing channels and who enforce the Company's sales and billing policies.  This largely involves the same personnel across the Company.  Thus, depositions will involve many of the same managerial witnesses for all pending cases.

For the same reasons, CenturyLink anticipates that plaintiffs will request that CenturyLink produce many of the same documents in all of the actions.  CenturyLink expects

that plaintiffs will ask for standard contract forms, tariffs, sales policies, customer representatives' phone "scripts," billing policies, and descriptions of billing procedures.  The same documents will be produced in each of the cases, giving rise to the same disputes about responsiveness, burden, and privilege.  *See id.*

## ARGUMENTS

Transfer of these nine actions to the Hon. Michael J. Davis, of the U.S. District Court for the District of Minnesota is appropriate for the following reasons.

**I.     THE ACTIONS "INVOLVE ONE OR
        MORE COMMON QUESTIONS OF FACT"**

As explained above, the nine actions "involv[e] one or more common questions of fact." 28 U.S.C. § 1407(a).  These actions contain essentially the same factual allegations and thus, commonality of facts is presumed.  *Cf. In re Gen. Motors Corp. Vehicle Paint Litig. (No. III)*, No. MDL 1392, 2001 WL 34834427, at *1 (J.P.M.L. Feb. 1, 2001) (finding common questions of fact where complaints contained "virtually identical allegations"); *In re Air West, Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974) ("Indeed, when two or more complaints assert comparable allegations against identical defendants based upon similar transactions and events, common factual questions are presumed.").  In the Washington action, plaintiff Lawhead even admitted that the cases would benefit from transfer under Section 1407.  *See* Exhibit 2 at 2.

Numerous reasons justify consolidation.  This Panel regularly consolidates putative class-action cases where plaintiffs allege a defendant engaged in systematically deceptive or fraudulent practices affecting consumers or purchasers.  *E.g.*, *In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*, 37 F. Supp. 3d 1386, 1387 (J.P.M.L. 2014) ("share[d] factual questions arising out of allegations" of marketing and sales practices); *In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1371, 1372 (J.P.M.L. 2013) (shared "factual

questions arising from defendants' alleged deliberate and systematic practice"); *see also In re Mirena IUD Prod. Liab. Litig.*, 938 F. Supp. 2d 1355, 1357 (J.P.M.L. 2013) (sharing common allegations of tort claims by consumers).  Similarly, the Panel has found that having to resolve common motions of arbitrability justifies consolidation.  *In re DIRECTV*, 655 F. Supp. 2d at 1370 ("[S]uch duplicative motions may benefit from centralized treatment.").

Here the Complaints allege uniform, nationwide conduct by CenturyLink.  As noted above, CenturyLink uses centralized management and policies for its sales and billing operations—and the core issue presented by each action is whether such uniform, nationwide sales or billing practices existed that caused the alleged disputes at issue.  Centralization is appropriate where a company's nationwide policies are involved.  *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010) (discovery of a company's practices will "undoubtedly overlap"); *In re Bank of Am. Wage & Hour Emp't Practices Litig.*, 706 F. Supp. 2d 1369, 1371 (J.P.M.L. 2010) ("corporate timekeeping policies . . . applied consistently throughout their locations" was an "important factor" for consolidation, because "discovery of defendants' corporate practices will overlap and . . . centralized proceedings will foster efficiencies").

In addition—although at this point it seems cumulative to excess—CenturyLink will raise identical affirmative defenses that also raise common factual and legal questions.  This is another reason justifying consolidation under Section 1407.  *See In re Cintas Corp. Overtime Pay Arbitration Litig.*, 444 F. Supp. 2d 1353, 1355 (J.P.M.L. 2006) ("[E]ach of the 70 courts in the actions brought by Cintas may also be required to address identical factual and legal arguments asserted in defense of those actions."); *In re Cardiac Devices Qui Tam Litig.*, 254 F. Supp. 2d 1370, 1372 (J.P.M.L. 2003) (finding centralization necessary and listing shared factual and legal

questions to include defenses to the claims); *In re Napster, Inc., Copyright Litig.*, No. MDL 1369, 2000 WL 35613839, at *1 (J.P.M.L. Oct. 11, 2000) (finding the availability of defenses in the different actions to be a common factual and legal question).

## II.   TRANSFER WOULD BE CONVENIENT TO THE PARTIES AND WITNESSES

Considering all interests involved, transfer is overall more convenient for the parties and witnesses.  28 U.S.C. § 1407(a).

Without consolidation, parties appearing in multiple actions will have to litigate duplicate, dispositive motions, take identical discovery, and argue identical discovery disputes. The parties will need to coordinate hearing and court dates with multiple local counsel across the country.  The parties will need to juggle deadlines—for motions and briefs, court hearings, depositions, *etc.*—in all of the actions at once, to avoid irreconcilable conflicts.  Each party will necessarily have to retain additional lawyers and travel around the country, thereby significantly increasing the costs.

The witnesses also would find transfer far more convenient.  CenturyLink's management overseeing its company-wide sales and billing practices and operations would be deposed multiple times and may have to travel to different locations around the country.  The Panel has explained that a benefit of consolidation is "ensuring that common parties and witnesses are not subjected to discovery demands that duplicate activity that will occur or has already occurred in other actions."  *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 655 F. Supp. 2d 1343, 1344 (J.P.M.L. 2009).

Considering all the interests of all parties and witnesses, CenturyLink respectfully submits that the benefits of consolidation, overall, far outweigh any possible arguments to simultaneously litigate nine identical actions in separate courts.

**III.    TRANSFER WILL PROMOTE THE JUST AND**
**EFFICIENT CONDUCT OF THESE ACTIONS**

Transfer also will "promote the just and efficient conduct of such actions."  28

U.S.C. § 1407(a).  Without transfer, many federal judges will have to resolve:

- The same issues of whether CenturyLink has a uniform, nationwide policy that gave rise to plaintiffs' claims;

- The same discovery disputes regarding the same documents used in these similar actions;

- The same motions CenturyLink will file, including motions to compel arbitration, enforce class-action waivers, dismiss invalid fraud and quasi-contract claims, and possibly to sanction unprofessional trial publicity; and

- Whether these claims are certifiable for class-wide resolution under Rule 23(b)(3).

Such duplication of effort would be a massive waste of judicial resources.  No reason exists for

so many courts to waste their time duplicating each other's efforts.

Consolidation would also avoid certification of overlapping classes.  At least some of the

actions—*McLeod* (CA), *Lawhead* (WA) and *Chavez* (CO)—appear to contemplate nationwide

classes.  Without centralization, both defendants and some class members could be subject to

different class notices, orders and judgment.  *Cf. In re Qualcomm Antitrust Litig.*, No. MDL

2773, 2017 WL 1282907, at *1 (J.P.M.L. Apr. 5, 2017) (centralization appropriate where "all of

these actions involve overlapping putative nationwide classes").

Furthermore, consolidation would advance one of the principle purposes of Section

1407—avoiding the risk of inconsistent rulings.  *In re Rembrandt Techs., LP, Patent Litig.*, 493

F. Supp. 2d 1367, 1369 (J.P.M.L. 2007); *see also In re Regions Bank ATM Fee Notice Litig.*, No.

MDL 2202, 2011 WL 346948, at *1 (J.P.M.L. Feb. 3, 2011) (centralization will "conserve

judicial resources" given the "virtually identical nature of the actions"); *In re Terrorist Attacks*

*on Sept. 11, 2001*, 295 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003) ("Centralization under Section

1407 with respect to these actions is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.").

## IV.   THE PANEL SHOULD CONSOLIDATE THE ACTIONS WITH THE HON. MICHAEL J. DAVIS OF THE DISTRICT OF MINNESOTA

Consolidation of the nine actions is the only logical outcome.  The real question for the Panel is in which District Court to consolidate them.

The Panel should transfer these cases to the Hon. Michael J. Davis of the U.S. District Court for the District of Minnesota.  Judge Davis now presides over one of the pending CenturyLink actions (*Romero*).  He has significant experience managing complex, multidistrict proceedings, having presided over three in past years, one of which started with over 9,000 actions.[7]  Two of these proceedings are now almost completed; each now consists of only one remaining action.  By contrast, only one other judge presiding over a CenturyLink action has had prior experience (a decade ago) presiding over an MDL proceeding.

Transferring the proceedings to the District of Minnesota also makes sense because coordination with a state court proceeding will be necessary.  On the same day that Plaintiffs filed the *Romero* case in Minnesota, the Minnesota Attorney General filed a lawsuit in Minnesota state court against CenturyLink, asserting similar allegations regarding CenturyLink's billing and sales practices.  *See State of Minn. v. CenturyTel Broadband Servs. LLC d/b/a CenturyLink Broadband*, No. 02-CV-17-3488 (10th Judicial Dist., Cty. of Anoka, Minn., filed July 12, 2017), attached hereto as Exhibit 3.  The existence of a pending state case related to the

---

[7]     *In re Baycol Prods. Liab. Litig.*, No. MDL-1431 (only one action remains pending, out of an original 9,107 actions); *In re Mirapex Prods. Liab. Litig.*, No. MDL-1836 (only one action remains pending, out of an original 441); *In re HardiePlank Fiber Cement Siding Litig.*, No. MDL-2359 (consisting of 14 actions).  *See* http://www.jpml.uscourts.gov/sites/jpml/files/ Pending_MDL_Dockets_By_District-July-17-2017.pdf.

subject of an MDL proceeding is a strong factor favoring transfer to that state's federal court.

*Cf. In re Atrium Med. Corp. C–QUR Mesh Prods. Liab. Litig.*, 223 F. Supp. 3d 1355, 1356

(J.P.M.L. 2016) (selecting district where, *inter alia*, "a number of state court cases[] are

pending"); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab.

Litig.*, 220 F. Supp. 3d 1356, 1359 (J.P.M.L. 2016) (transferee forum was "in close proximity to

a large number of state court actions"); *In re Nexium (Esomeprazole) Prods. Liab. Litig.*, 908 F.

Supp. 2d 1362, 1364-65 (J.P.M.L. 2012) (transferee forum was "proximate to at least four state

court actions").[8]

    Convenience of travel is another factor.  Minneapolis has a major airport that acts as a

hub for several airlines, and which offers direct connections to each of the cities in which a case

was filed.  *Cf. In re Smith & Nephew BHR & R3 Hip Implant Prods. Liab. Litig.*, No. MDL

2775, 2017 WL 1283668, at *2 (J.P.M.L. Apr. 5, 2017) (District of Maryland "is a convenient

and accessible forum for this nationwide litigation"); *In re IntraMTA Switched Access Charges

Litig.*, 67 F. Supp. 3d 1378, 1380 (J.P.M.L. 2014) (coordinating cases in Dallas, because it "is an

easily accessible and central location").

    Finally, transfer to the District of Minnesota will not delay these proceedings.  The

median time for disposition of a civil case in that District (9.0 months, from filing of case to

disposition) is better than the average time nationally (9.9 months).  *See*

http://www.uscourts.gov/ sites/default/files/data_tables/fcms_na_distprofile0331.2017.pdf.

---

[8]    Judge Davis has significant experience coordinating an MDL with pending state court cases.  In the *Baycol Prods. Liab.* MDL, Judge Davis coordinated discovery with many state courts.  *See, e.g.*, Pretrial Order No. 25, *In re Baycol Prods. Liab. Litig.*, Civ. No. 1-md-1431-MJD-SER, (D. Minn. June 5, 2002), ECF No. 102 (establishing procedure for coordination with state-court Baycol litigation).

## <u>CONCLUSION</u>

For these reasons, the Panel should transfer the actions identified in the Schedule of

Actions to the Hon. Michael J. Davis of the U.S. District Court for the District of Minnesota.

DATED:  July 31, 2017

Respectfully submitted,

*/s/ Douglas P. Lobel*
Douglas P. Lobel (VA Bar No. 42329)
David A. Vogel (VA Bar No. 48971)
COOLEY LLP
11951 Freedom Drive
Reston, Virginia  20190-5656
Telephone:  (703) 456-8000
Facsimile:  (703) 456-8100
Email: dlobel@cooley.com
　　　　dvogel@cooley.com

*Attorneys for CenturyLink, Inc. and Its*
*Subsidiaries (collectively "CenturyLink")*

147519798